UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20001-CR-COOKE

UNITED STATES OF AMERICA

vs.

**DIAMOND BLUE SMITH,**

      **Defendant.**
_____/

## FACTUAL PROFFER

The United States and Defendant Diamond Blue Smith (the "defendant") agree that had this case proceeded to trial, the United States of America would have proven, beyond a reasonable doubt, the following facts, among others, pertaining to violations of Title 18, United States Code, Sections 371 and 1343, which occurred in the Southern District of Florida and elsewhere.

From in or around May 2020, through in or around at least August 2020, the defendant knowingly and willfully conspired and agreed with James Stote ("Stote"), Phillip J. Augustin ("Augustin"), and others to submit and cause the submission of fraudulent Paycheck Protection Program ("PPP") loan applications.  PPP loans are forgivable business loans for small businesses, created as part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, the general purpose of which was to help businesses pay their expenses during the COVID-19 Pandemic and to encourage them to retain their employees.  Generally, a business could seek a PPP loan in the amount of 2.5 times its average monthly payroll.

A PPP loan application was processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies.  While it was

the participating lender that issued the PPP loan, the loan was 100% guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

In or around May of 2020, the defendant was in communication with Augustin about the possibility of obtaining a business loan. The defendant met in person with Augustin and Stote, whom Augustin introduced to the defendant as someone who could help him apply for a PPP loan. The defendant, without obtaining all of the details about the specifics of a PPP loan, authorized Stote and Augustin to apply for a PPP loan on his behalf. In exchange, the defendant agreed to pay Stote and Augustin a significant portion of the loan proceeds, although he did not agree to the full 25% that Stote and Augustin requested.

In furtherance of the conspiracy, and to accomplish its object and purpose, the defendant caused the submission of two PPP loan applications on behalf of his companies, Throwbackjerseys.com, LLC ("Throwbackjerseys.com") and Blue Star Records, LLC ("Blue Star Records"), that contained materially false and fraudulent representations. Specifically, between the approximate dates of May 17 and May 18, 2020, Stote, in coordination with the defendant and at the defendant's request, electronically submitted to Bank 1, through Bank Processor 1, a PPP loan application package on behalf of Throwbackjerseys.com seeking a loan

in the amount of $426,717 (the "Throwbackjerseys.com Loan"). The loan application documents prepared by Stote falsely claimed that Throwbackjerseys.com had 21 employees and an average monthly payroll of $170,687. The supporting documents, also prepared by Stote, were forgeries that included a purported company bank statement and IRS Forms 941 for 2019 (Employer's Quarterly Federal Tax Return) signed with the name "Diamond Smith." Florida Department of Revenue records reflected that Throwbackjerseys.com did not report any wages to employees for 2019. IRS records showed that Throwbackjerseys.com did not file any Forms 941 in 2019.

Stote instructed the defendant to authorize and approve the application via an electronic link sent to the Throwbackjerseys.com email from Bank 1, through Bank Processor 1. Bank Processor 1's email advised the defendant that he was submitting a PPP loan application on behalf of Throwbackjerseys.com, and it required the defendant to electronically certify statements affirming: (1) that the applicant was in operation on February 15, 2020 and had employees to whom it paid salaries/payroll taxes or paid independent contractors, as reported on Form(s) 1099; (2) that the funds would be used to retain workers, maintain payroll, or make mortgage/interest/lease/utility payments as specified by the PPP rules and that unauthorized use of the loan proceeds could result in charges of fraud; and (3) that the information provided in the application, including supporting documents, was "true and accurate in all material respects," and that making false statements could result in criminal charges.

The email from Bank 1 advised the defendant that he was signing and submitting an application for a PPP loan. Without reviewing the loan application or supporting statements, the defendant electronically signed and certified the statements, and he caused the application to be

submitted to Bank 1, through Bank Processor 1. Based on the false and fraudulent representations made in the loan application paperwork and supporting documents, the PPP loan application for Throwbackjerseys.com was approved, and on or about May 20, 2020, Bank 1 wired approximately $426,717 in loan proceeds into the Throwbackjerseys.com bank account which the defendant controlled. Thereafter, the defendant learned that PPP funds were to be used for specified business purposes; however, the defendant spent the loan proceeds on himself and others despite knowing that he was not permitted to spend the loan proceeds as he did.

The defendant was interested in applying for another PPP loan on behalf of his other company, Blue Star Records, but he understood from Stote that he could not be the applicant on more than one PPP loan. As a result, on or about May 21, 2020. Stote, at the defendant's direction, added the defendant's family member as an officer to the corporate records for Blue Star Records on file with the State of Florida in order for the defendant to obtain a second PPP loan for which he was not qualified. Between the approximate dates of May 21 and May 22, 2020, Stote, in coordination with the defendant and at the defendant's request, electronically submitted to Bank 1, through Bank Processor 1, a PPP loan application package on behalf of Blue Star Records seeking a loan in the amount of $708,065 (the "Blue Star Records Loan"). At the defendant's direction, the loan application concealed the defendant's ownership of Blue Star Records by listing the defendant's family member as the sole owner of the company. The loan application documents prepared by Stote falsely claimed that Blue Star Records had 35 employees and an average monthly payroll of $283,226. The supporting documents, which included a purported company bank statement and IRS Forms 941 for 2019, signed with the name of the defendant's family member, were forgeries. Florida Department of Revenue records reflected that Blue Star Records did not report any wages to employees for 2019. IRS records

showed that Blue Star Records did not file any Forms 941 in 2019.

Stote instructed the defendant to authorize and approve the application via an electronic link sent to the Blue Star Records' email from Bank 1, through Bank Processor 1. Bank 1's email advised the defendant that his family member was submitting a PPP loan application on behalf of Blue Star Records, and it required the family member to electronically certify statements affirming: (1) that the applicant was in operation on February 15, 2020 and had employees to whom it paid salaries/payroll taxes or paid independent contractors, as reported on Form(s) 1099; (2) that the funds would be used to retain workers, maintain payroll, or make mortgage/interest/lease/utility payments as specified by the PPP rules and that unauthorized use of the loan proceeds could result in charges of fraud; and (3) that the information provided in the application, including supporting documents, was "true and accurate in all material respects," and that making false statements could result in criminal charges.

With respect to the Blue Star Records loan, the defendant knew that he was signing and submitting an application for a PPP loan for which he was not qualified. Without reviewing the loan application or supporting statements, and with deliberate ignorance of the truth, the defendant electronically signed and certified the statements by forging the signature of his family member, and he caused the application to be submitted to Bank 1, through Bank Processor 1. Based on the false and fraudulent representations made in the loan application paperwork and supporting documents, the PPP loan application for Blue Star Records was approved, and on or about May 26, 2020, Bank 1 wired approximately $708,065 in loan proceeds into the Blue Star Records bank account which the defendant controlled.

After receiving approximately $1,134,782 in total PPP loan proceeds, the defendant

spent the funds on himself and others in a manner that was not authorized under the CARES Act. For example, the defendant used the PPP loan funds on luxury items such as a Ferrari 458 Italia sports car, and at the Seminole Hard Rock Hotel and Casino. The defendant also paid at least approximately $250,000 to Stote and Augustin as kickbacks for their assistance in preparing and submitting the Throwbackjerseys.com Loan and the Blue Star Records Loan.

The parties agree that the fraud scheme in this case involved the use of interstate wires, including those required to submit the fraudulent loan applications on behalf of Throwbackjerseys.com and Blue Star Records.

The information contained in this proffer is not a complete recitation of the facts and circumstances of this case, but the parties agree it is sufficient to prove the Information beyond a reasonable doubt.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 08/03/2021   By: *Aimee C. Jimenez*
AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION

Date: 08/03/2021   By: *Philip Trout*
PHILIP B. TROUT
TRIAL ATTORNEY

Date: 8/3/2021   By: Adriana Collado-Hudak
ADRIANA COLLADO-HUDAK
ATTORNEY FOR THE DEFENDANT

Date: 08/03/2021    By: _____

DIAMOND BLUE SMITH
DEFENDANT