UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO. 21-20001-CR-COOKE

**UNITED STATES OF AMERICA**

vs.

**DIAMOND BLUE SMITH,**

    **Defendant.**
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Diamond Blue Smith (the "Defendant"). The Defendant is presently set for sentencing before the Court on December 16, 2021 for his conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 371. The offense stems from the Defendant's participation in a fraud scheme involving the Paycheck Protection Program ("PPP") under the Cares Act, as a result of which the Defendant received more than $1 million in fraudulent loan proceeds.

For the reasons set forth herein, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 37 months, to be followed by three years of supervised release, and that the Court impose a forfeiture money judgment, order the forfeiture of specific property, and order restitution, as agreed to by the parties and as discussed below. The government believes that its sentencing recommendation will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I. FACTUAL BACKGROUND

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and his co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with James Stote ("Stote"), Phillip J. Augustin ("Augustin"), and others. The Defendant obtained two fraudulent PPP loans for his companies, Throwbackjerseys.com, LLC ("Throwbackjerseys.com") and Blue Star Records, LLC ("Blue Star Records"), with Stote providing falsified documents and submitting the applications on the Defendant's behalf in exchange for a kickback from the loan proceeds. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

### A. The CARES Act

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP funding. These funds were designed to address the unprecedented crisis facing Americans— especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need. To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses. The supporting documentation requirement was minimal, and could be satisfied with one years' worth of the company's tax records. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

**B.     Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme is detailed in the Defendant's factual proffer statement [ECF No. 36], and the Pre-Sentence Investigation Report ("PSR") [ECF No. 41].

Beginning in May 2020 through in or around at least August 2020, the Defendant conspired with Stote, Augustin, and others to obtain by fraud two PPP loans on behalf of his companies, Throwbackjerseys.com and Blue Star Records.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of Throwbackjerseys.com that contained materially false and fraudulent representations. The supporting documents prepared by Stote included a falsified company bank statement and IRS Forms 941 for 2019 (Employer's Quarterly Federal Tax Return), which falsely represented wages that the company had not paid to employees that the company did not have. On May 18, 2020, the Defendant electronically signed a PPP loan application form on behalf of Throwbackjerseys.com, which falsely represented that Throwbackjerseys.com had 21 employees

3

and an average monthly payroll of $170,687. Relying on those false representations, Bank 1 approved and funded a PPP loan for Throwbackjerseys.com in the amount of $426,717.

Following the success of this fraudulent PPP loan application, the Defendant wanted to apply for a second PPP loan on behalf of another company he owned, Blue Star Records. The Defendant was advised by Stote, however, that he could not be the applicant on more than one PPP loan. In order to get around this limitation, on or about May 21, 2020, the Defendant obtained Stote's help to add his mother as an officer to the corporate records for Blue Star Records. Thereafter, the Defendant caused the submission of a PPP loan on behalf of Blue Star Records that falsely represented that the Defendant's mother was the sole owner of the business. The loan application for Blue Star Records contained false and fraudulent representations about the number of employees and wages paid for each quarter of 2019, similar to the false representations contained in the Throwbackjerseys.com loan application.

The loan application and supporting documents for Blue Star Records were prepared by Stote, and they included a falsified bank statement and IRS Forms 941 for each quarter of 2019. The Defendant forged his mother's signature on the Blue Star Records loan application, which falsely claimed that Blue Star Records had 35 employees and an average monthly payroll of $283,226. Relying on those false representations, Bank 1 approved and funded a PPP loan for Blue Star Records in the amount of $708,065. Combined with the Throwbackjerseys.com loan, the Defendant fraudulently obtained $1,134,782 in PPP funds.

The Defendant paid kickbacks to Stote and Augustin totaling approximately $250,000, for their assistance in preparing and submitting the fraudulent loan applications on behalf of Throwbackjerseys.com and Blue Star Records. The Defendant spent the PPP loan proceeds on

himself and others, not on the uses authorized under the CARES Act. The Defendant used the loan proceeds on luxury items, such as the purchase of a Ferrari 458 Italia sports car and at the Seminole Hard Rock Hotel and Casino.

## II.  PROCEDURAL HISTORY

On September 30, 2020, the Defendant was charged by complaint with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344 [ECF No. 3]. The Defendant agreed to a waiver of indictment, and on January 5, 2021, he was charged in an Information with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371 [ECF Nos. 15, 16, 17]. The Defendant pleaded guilty before this Court to the Information pursuant to a written plea agreement on August 4, 2021 [ECF Nos. 31, 36, 37]. Sentencing is presently scheduled for December 16, 2021.

## III.  SENTENCING GUIDELINES CALCULATIONS

As explained below, the United States submits that the Defendant should be assigned a Total Offense Level of 21. At Criminal History Category I, the corresponding advisory Guidelines range is 37-46 months in prison.

### A.  **The Government's Computation of the Offense Level**

The United States' Offense Level calculations are as follows:

| | |
|---|---|
| Base Offense Level, § 2B1.1(a)(2) | 6 |
| Loss greater than $550,000 but not more than $1,500,000, § 2B1.1(b)(1)(H) | 14 |
| The defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, pursuant to § 2B1.1(b)(17)(A) | 2 |

5

| | |
|---|---|
| Increase to level 24, pursuant to § 2B1.1(b)(17)(D) | Total: 24 |
| Acceptance of Responsibility and Timely Notification § 3E1.1(a) and (b) | (3) |
| **Total Adjusted Offense Level** | **21** |

The Defendant objects to Probation's recommendation in the PSR to impose a two-level enhancement for employing sophisticated means, pursuant to Guidelines Section 2B1.1(b)(10). *See* PSR at ¶ 54. While the government agrees that the offense involved "sophisticated means," particularly in the making of false company bank statements and IRS forms filed with the fraudulent loan applications, the Defendant did not intentionally engage in or cause the conduct constituting sophisticated means in this case. Thus, the government is generally in agreement with the Defendant that the sophisticated means enhancement should not be applied here.

The Defendant also objects to Probation's recommendation in the PSR to impose a two-level enhancement for having derived more than $1,000,000 in gross receipts from a financial institution, pursuant to Guidelines Section 2B1.1(b)(17)(A). As explained below, the Defendant should receive an enhancement for having received more than $1,000,000 in gross receipts from a financial institution as a result of this offense.

  **B.** **Defendant derived more than a million dollars in gross receipts from a financial institution, requiring enhancement under § 2B1.1(b)(17).**

Section 2B1.1(b)(17)(A) of the Guidelines provides a two-level enhancement when "the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense." U.S.S.G. § 2B1.1(b)(17)(A). The comments section in the Guidelines provides that the enhancement applies to a defendant "if the gross receipts to the defendant individually, rather than to all participants, exceeded $1,000,000." §2B1.1 Comment 13(A). In

6

addition, "[g]ross receipts from the offense" is defined as "all property … which is obtained directly or indirectly as a result of such offense."  §2B1.1 Comment 13(B).

The Defendant argues that this enhancement should not be applied because the loss amount calculation already takes into account the amount the defendant received from the offense, and thus, this enhancement in effect double counts the same aspect of the offense conduct.  Def's Objections [ECF 45 at p. 3].   The Defendant's argument lacks merit and this objection should be overruled.

First, there is no real question here whether the enhancement applies.  It clearly does.  The Defendant directly received more than $1,000,000 in property, i.e., gross receipts, from a financial institution, Bank 1, as a result of the offense.  There is no dispute that Bank 1 was the source of $1,134,782 that the Defendant obtained and that Bank 1 was a victim of the offense conduct.  *See, e.g., United States v. Muho*, 978 F.3d 1212, 1221-22 (holding that enhancement applied when the financial institution was the source of the property and was the victim of the offense conduct).

Second, this enhancement has a specific application, and is not interchangeable with the loss amount.  The Defendant was convicted for his participation in a wire fraud conspiracy.  This conspiracy involved over 90 fraudulent PPP loans and caused an intended loss of over $34 millions of dollars, and an actual loss to financial institutions in excess of $17 million.  However, the Defendant is being held accountable only for the role that he played as to his own loans and the resulting loss he directly caused therefrom.  The "loss amount" calculation in the Guidelines is intended to broadly encompass the intended and actual loss to anyone or any entity who was a victim of the offense, whether or not any of the proceeds derived from the offense made its way to the Defendant.

By contrast, the enhancement at issue applies only when the victim of the offense is a financial institution, and when the Defendant – individually – received more than $1 million from that financial institution as a result of the offense. The enhancement reflects the U.S. Sentencing Commission's view that offense conduct directed at a financial institution that has this particular result, i.e., the defendant deriving more than $1 million from the financial institution, warrants a sentencing enhancement. In other words, the conduct warrants a higher offense level, i.e., greater punishment, over and above whatever the offense level may be after calculation of the loss amount. Furthermore, the U.S. Sentencing Commission determined that this offense conduct is sufficiently egregious that it set an offense level floor of 24 in cases where this enhancement applies. U.S.S.G. §2B1.1(b)(17)(D). Guidelines Section 2B1.1(b)(17)(D) provides that if the financial institutions enhancement applies, and the offense level is less than 24, the offense level shall be increased to 24. *Id.*

In this case, the adjusted offense level would reach 22 if the sophisticated means enhancement is not applied, but §2B1.1(b)(17)(D) dictates that the offense level must be increased to 24 where the enhancement applies. Thus, with or without application of the sophisticated means enhancement, the adjusted offense level in this case is 24 once the enhancement for receiving more than $1 million from a financial institution is applied. *See* U.S.S.G. §2B1.1(b)(17). For the reasons discussed above, this sentencing enhancement applies and the Defendant's objection should be overruled.

### IV.  CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States.

#### A.  Nature and Circumstances of the Offense

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting not one, but two false applications claiming to have employees and payroll that did not exist. The applications were supported by false tax forms, and fictitious bank statements. As to the second loan application, the Defendant concealed his ownership interest in the business by listing his mother as the owner, and he forged his mother's signature on the application. The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range. The United States' recommended sentence of 37 months' imprisonment, which is at the bottom of the Guidelines range, is sufficient but not greater than necessary to accomplish this goal.

#### B.  History and Characteristics of the Defendant

The Defendant is a 37-year-old musician who conducts live performances with a band. The Defendant is self employed and owns several companies, including the two companies he used to apply for the fraudulent PPP loans in this case. The Defendant has two prior arrests for battery, but no convictions, and zero criminal history points.

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for trial. The sentence recommended by the United States reflects such acceptance because it is within the Guidelines produced by the Offense Level that has been adjusted downward by three levels for acceptance of responsibility pursuant to Section 3E1.1(a) and (b).

**C.      Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant**

The sentence in this case should address a need for both general and specific deterrence. As to general deterrence, the Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014). As explained above, this case was motivated by greed at time when millions of Americans were suffering from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance—especially in the Southern District of Florida. The government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Actors like the Defendant who seek to defraud these programs not only drain the program of limited funding, they make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence at the bottom of the Guidelines range is sufficient to protect the public from future crimes of this Defendant who has no prior convictions. With this sentence, the government believes the risk of recidivism is low.

**D.     Need for the Sentence to Avoid Unwarranted Sentencing Disparities**

The sentence recommended by the United States will not create an unwarranted sentencing disparity. There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case. While a relatively small number of defendants have been sentenced to date for offenses related to PPP fraud, judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment. *See, e.g.*, *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

Seven other conspirators in this scheme have been sentenced. On October 18, 2021, the court sentenced co-conspirator Devonte Thames to 31 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Thames*, Case No. 21-cr-60125-RKA (S.D. Fla.). The sentence was at the bottom of the adjusted Guidelines range after the court granted the government's motion, pursuant to Section 5K1.1, and reduced

Thames' sentence by approximately 33%. Meanwhile, on October 13, 2021, the court sentenced co-conspirator Dennes Garcia to 18 months imprisonment – which was at the bottom of the Guidelines range – three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Garcia*, Case No. 21-cr-60146 (S.D. Fla.).

In addition, on July 13, 2021, the court sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Walker*, Case No. 20-cr-60159-RAR (S.D. Fla.). On July 27, 2021, co-conspirator Tonye Johnson was sentenced by the court to 18 months in prison, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Johnson*, Case No. 21-CR-60017-RKA (S.D. Fla.). On September 24, 2021, the court sentenced Brian Arnold to time served, three years of supervised release, including one year of home confinement, 600 hours of community service, and ordered him to pay restitution and forfeiture. *United States v. Arnold*, No. 21-CR-20331 (S.D. Fla.). Unlike defendants Smith, Thames, Walker, and Johnson, the proceeds for Defendant Arnold's fraudulent PPP loan were immediately frozen before he could pay any kickbacks or otherwise spend the funds. On October 8, 2021, the court sentenced Cindi Denton to six months imprisonment, three years of supervised release, including one year of home confinement, and ordered her to pay restitution and forfeiture. *United States v. Denton*, No. 21-CR-60171 (S.D. Fla.). Defendants Walker, Johnson, Arnold, and Denton had no criminal history points; they each sought fraudulent PPP loans for their own companies, for less than $500,000 each, and did not refer others to the scheme.[1]

---

[1] Notably, however, defendant Johnson tested positive for marijuana during the presentence investigation and attempted to conceal his marijuana use from Probation by using a device to provide urine from someone other than the test taker.

On July 30, 2021, the court sentenced Andre Clark to 33 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Clark*, Case No. 21-CR-60029 (S.D. Fla.). Defendant Clark sought his own fraudulent PPP loan and also referred other conspirators to the scheme, and he did so with a significant criminal history. Defendant Clark's sentence was at the bottom of the Guidelines as calculated by the court, after the court held that a two-level minor role reduction was warranted because Clark ultimately received very little from the scheme, so his Guidelines loss amount greatly exceeded his personal gain.[2]

A sentence of 37 months for this Defendant, which is the low end of the Guideline range, is a fair and just sentence in this case. It takes into consideration that the Defendant is being held responsible only for the loss associated with his two fraudulent loans totaling $1,134,782, but also provides deterrence to others who may seek to defraud on-going government programs intended to alleviate the economic impacts of the Covid-19 pandemic.

## V.     RESTITUTION & FORFEITURE

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). The parties agreed in the Plea Agreement that the Defendant owes restitution in the amount of $1,134,782, which represents the loss to Bank 1 as a result of the Defendant's participation in the conspiracy. The Defendant has objected to Paragraph 103 of the PSR, and advised the government that he did not withdraw the balance of $23,436.77, which was removed from his Throwbackjerseys.com bank account before the account was closed. The government has been informed by Bank 1, the

---

[2] Based primarily on his referrals, Clark's loss amount for sentencing purposes was between $3,500,000 and $9,500,000. However, Clark ultimately received little money from the scheme, which the sentencing court found to be a significant factor at sentencing.

victim in this case, that the Defendant's bank transferred $23,436.77 to Bank 1 from the Defendant's account. Accordingly, the restitution amount of $1,134,782 should be reduced by $23,436.77, to reflect the amount that the Defendant currently owes, which is $1,111,345.23. Restitution is owed joint and severally with the Defendant's co-conspirators charged in the following related case: 21-CR-00805-PAB (N.D. Oh.).

Furthermore, pursuant to the Plea Agreement, the Defendant agreed to the forfeiture of the 2010 black Ferrari 458 Italia, and a forfeiture money judgment in the amount of $1,134,782. On October 25, 2021, the Court entered a preliminary order of forfeiture in which the Court entered a forfeiture money judgment of $1,134,782 [ECF No. 44].

*  *  *

## **CONCLUSION**

For the forgoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 37 months, to be followed by a term of supervised release of three (3) years. The United States also requests that the Court order restitution, forfeiture, and a special assessment, consistent with the Plea Agreement and the modifications discussed herein.

Respectfully Submitted,

| JUAN ANTONIO GONZALEZ | JOSEPH S. BEEMSTERBOER |
|---|---|
| UNITED STATES ATTORNEY | ACTING CHIEF, FRAUD SECTION |

By:  */s/ Aimee C. Jimenez*  
AIMEE C. JIMENEZ  
Assistant United States Attorney  
Court No. A5500795  
99 NE 4TH Street  
Miami, FL 33132  
Tel. (305) 961-9028  
Fax (305) 961-7976  
Email: aimee.jimenez@usdoj.gov

By:  */s/ Philip B. Trout*  
PHILIP B. TROUT  
Trial Attorney, Fraud Section  
U.S. Department of Justice  
1400 New York Ave NW  
Washington, DC 20530  
Tel: (202) 616-6989  
Fax: (202) 514-3708  
Email: philip.trout@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 30, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

<u>s/Aimee Jimenez</u><br>
Aimee C. Jimenez<br>
Assistant United States Attorney